Call our next case. Number 13-2192, Batchelor v. Rose Tree Media School District, et al., Mr. Schwartz and Mr. Ginsburg. Take your time setting up. No problem. Good morning, Your Honors. My name is Frank Schwartz. I represent... Barely. You're right. It's still morning. Yes, a couple minutes. I represent the plaintiffs in this matter, Ryan Batchelor and his mother, Janet Batchelor, who are here today before the court seeking justice with respect to the U.S. District Court for the Eastern District of Pennsylvania's dismissal of their retaliation complaint for failure to exhaust administrative remedies. Pretty much everything really comes down to, do you have to exhaust before you come before us or before a federal court? Yes, it does, Your Honor. I would like to reserve with the indulgence of the court four minutes for... No problem at all. No problem at all. Before we get to the exhaustion, let me ask you this question. Why doesn't the district's failure to implement Ryan's IEP fall within the IDEA, which includes, as you note in your brief, any matter relating to the identification, evaluation, or educational placement of the child or the provision of a fate? Let me explain to you exactly why it does not, Judge Greenaway. First of all, while this case is in the context of an educational milieu, okay, it presents not a single issue, all right, of education or a single educational issue because, first of all, let's take what you just read to me. There is no issue of identification. It is undisputed that the district timely identified Ryan as a student with learning disabilities, both under the Rehabilitation Act, Section 504, and the IDEA. No issue. There was no issue with respect to the evaluation of the extent of Ryan's learning disability. All right? It is undisputed that he was eligible. All right? There is no issue with respect to educational placement of Ryan because he was mainstream and nobody, and appropriately so. So there was no dispute. Let me ask you this. In your opening brief, you claim that this is a civil rights case, right? In essence, yes. You say that the principal issues of which involve the defendant's intentional efforts to punish Ms. Batchelor, I hope that's how you pronounce it. Correct. Ms. Batchelor and Ryan for their advocacy with respect to Ryan's legally protected rights by, among other things, refusing to implement Ryan's special education plans. Yes. Now, why doesn't that fall right within the IDEA, right, his special education plans? Typically, under the IDEA, the purpose of the IDEA is to provide a student with what they call a free and appropriate public education, a FAPE. And I would say in 95% of cases where failure to render a FAPE is alleged, it is an educational issue which falls within the scope of the duty to exhaust administrative remedies. But in this case, where the only issue is whether the terms of a specific IEP was followed, that is outside the scope, all right, of the duty to exhaust administrative remedies for this reason. The failure of the district to follow the IEP is going to fall outside of the IDEA. That's your claim? No, Your Honor. Okay. It is not an issue, okay, of typically in cases where a parent is challenging the educational offer to a student, they're saying he was improperly evaluated, the educational support was inadequate. That's not – plaintiffs in this case are saying if the IEP had been followed term by term, then Ryan would have received a FAPE. You're saying they didn't do what they promised to do. Exactly, Your Honor. And so when they don't do what they promised to do, then you go to a fair hearing through the administrative process, and that hearing officer has the power to oblige the school district to do what it is supposed to do. No, Your Honor. It's almost as if – go ahead. He wants the exact opposite. Go ahead. You want to be outside of that process, right? We fall outside – because we fall outside the scope. But I'm asking why should you – Yeah, why should you fall outside? Why – let us assume – let's assume that the school district wasn't keeping its promises to your client. Why did you not have an adequate remedy through the administrative process to grieve the fact that the school district wasn't doing what it promised and have that hearing officer, that IDEA administrative hearing officer, require the school district to do what it had promised to do? Well, first of all – But first of all, decide whether in fact, you know, to what extent was it not doing what it promised to do and then oblige it to do what it had promised to do. articulated implementation exception to the duty to exhaust administrative remedies under the IDEA. Where a parent or a student, such as in this case, is not challenging the adequacy of an IEP, is not challenging the content of an IEP, but is only challenging the intentional failure of a district to implement the IEP, that is outside the scope. There's no – that's not an educational issue. That's a legal issue. So that's why you rely on MTULA. Correct, Your Honor. Am I correct in understanding, though, that MTULA has been wrestled with? It's been interpreted in some district court opinions rather broadly and others rather narrowly. Isn't that true? Well, true. There was a setback. This Court in Chambers said that in MTULA it overruled MTULA partially with respect to the ability to proceed with remedies under Section 1983 with respect to the failure to give a fate. No, I'm talking about the implementation exception. My reading of the case law is that there is some disagreement or confusion among the district courts that have handled this issue as to just how broad that implementation exception is. Would you agree with that? I would agree with that because all of the cases where there has been some confusion mentioned or acknowledged are cases which fall clearly within the parameters of those four issues that are identified in Section 1415b6. Retaliation is not one of them. There's not one retaliation case where the only allegations being made are that the failure to implement the IEP was a – really by reason of the retaliation by the district. So we're – it's an apples and oranges here. In those seven cases, in the cases I cited in my brief, the seven cases issued by five – or cited by five different judges within the Third Circuit, all of those cases have said that where the only issue is the implementation of specific provisions of an IEP, that is outside the scope of Section 1415b6 because that is an issue – really a question of context. This isn't really the failure to implement, though. It's the inadequacy of the implementation. It's an absolute – Your Honor, that's a misinterpretation of our case. Our case is not that they misapplied it. It's that they refused. We had an agreement. Ms. Baxter did not challenge the itemizations in his IEP, all right? And nor is our complaint saying that there's a general failure to indicate a fate. If you look at paragraph 80, all right, of our complaint, that's paragraph 175a of the appendix, we cite the seven specific terms in the IEP that the district never did, ever. Now, but that brings us again back to the crux. They didn't – let's assume you're right. Those seven things they didn't do. Correct. Why don't you go before a hearing officer, and if that hearing officer rules you a favor, are you telling us that the school district is not going to comply? The reason we won't go before – or we should not have to go before an administrative proceedings because this is an act of retaliation, and they can't issue any damages for retaliation, Your Honor. This Court has said, and many courts have said, that there is no ability to seek compensatory or punitive damages. Do you have any cases that hold that retaliation claims are exempted from exhaustion? Yes, I do. The case of Herring, Your Honor. From where? Hang on. It is from the Eastern District of Pennsylvania. It is Herring v. Chichester School District, 2008 Westlaw 436910. But on the circuit level, haven't the First and the Eleventh Circuits required exhaustion of retaliation claims? Not to my knowledge, Your Honor. First Circuit in MTV, Eleventh Circuit in Weber v. Cranston School Committee. I am not familiar either. I know that the Second and the Ninth Circuits have said that where you have a final IEP, and here we had a final – it was an unchallenged IEP. Where you have a final IEP, it is the legal obligation of the duty to perform under that IEP in order to provide the student with fair and public education. At this point, I only know of two circuits that I thought dealt with it. One was the First Circuit in MTV v. DeKalb County and the other was the Eleventh Circuit in Weber v. Cranston School Committee. I am sorry, Your Honor. I am not familiar with either of those two cases. The concern that you have here is that regardless of what happens here, even if there is retaliation, if we excuse exhaustion for retaliation, and you also bring it as a civil rights case, we are effectively reading out any matter relating to the IDEA. And the consequences of this are that exhaustion is not going to be required. In a whole host of cases, we are going to be on a very slippery slope. I mean, one of the concerns that courts have in writing decisions is that, hey, let's not mess it up for the future. And there is clearly an intent that if you have claims with regard to a school district, you exhaust them, and then you can go further. But saying, I don't have to exhaust, in this case, in a situation where you are asking us to create a circuit split, it's a pretty tough, pretty tough... Your Honor, I appreciate the slippery slope concerns that you expressed, but you have to decide this case on its facts. You can rule in our favor in this case, and it would be an extremely narrow and limited exception, that when and only when... Okay, this case on its facts, and let's assume you're right. Let's assume that they've stacked the deck and whatnot. What harm does it do? Because you want to get to the merits, and now we're on a procedural issue. Don't you get to the merits a lot more quickly if you decide to go forward with the hearing officer? Then if you lose, then you decide what your options are. No, Your Honor, because it would be futile to do so. There's no remedy. It has been held by this Court and others that the normal remedy in a retaliation case is that you receive compensatory monetary damages and maybe punitive damages if the case is appropriate for punitive damages. That is completely unavailable in a due process hearing. Can you answer this question? What is it that you want for Ryan Batchelor? We are asking totally for retrospective relief. I know you want monetary damages, obviously, right? You want compensatory, you want punitive. I get that. But here's what I don't understand. You say that the problem here is a failure to implement the IEP, right? I'm hard-pressed to think of any case that could arise under the IDEA where the parent's claim is not a failure of the district to implement the IEP in whatever way it might arise. They didn't do this. They didn't do that. They didn't provide this. They didn't provide that. Now here, and obviously you disagree. That's great. I'm looking forward to the answer. But here, is there no compensatory education that would compensate the retaliation that has befallen Ryan? It's only monetary damages? For this reason, Your Honor, he has already graduated. He left school. Because of the degree of retaliation, he was forced to leave in his senior year of school, went to another school, graduated. Who paid for that school? The bachelors did. He went to another public school? He went to a cyber charter school, a 21st century cyber charter school. And they paid for that out of their own pocket? Correct. And had they gone through the administrative route, they could have gotten a hearing officer to pay for that by awarding compensatory education. That's this Court's decision in Chambers. This Court did say that you can get restitution damages for out-of-pocket expenses, but the normal remedy for retaliation, and especially the degree of retaliation that Ryan and his mother were subjected to repeatedly by this district, is the payment of compensatory damages. Okay? Pain and suffering, humiliation, none of which is available in the due process. So you want us now to essentially carve out a new or distinct cause of action when a parent and or child has a failure to implement an IEP, there are monetary, there should be, according to you, monetary damages available against the school district, the principal, whomever the parties may be because of that failure to implement. No, Your Honor, I want to get back to the point you made before about isn't it true that most of the cases have to do with failure to implement an IEP? That is not true. The vast majority of cases that are brought under the IDEA are parents saying, yes, there was a plan, but that plan is not adequate. That plan does not meet my students' needs. Or the placement, you're placing him outside of school, I want him mainstream. All right? The vast majority of cases that have to do with failure to implement, if you will, an IEP, have to do with concerns falling within the gambit, within the scope of 1415B6, either the identification, the placement, or the educational placement of the support, the adequacy of support services. We are saying none of that. We are saying that had, we were, Ms. Baxter never challenged the terms of the IEP. Again, it's our position that had the IEP been fulfilled, Ryan would have received a fair and appropriate public education by the district. But because, and only where there's, the narrow decision is only where there's retaliation. So now. Where there's retaliation, where the failure to implement was because of retaliation, that's the exception. So can you get to my point now, the point I just mentioned, which is what you want us to provide you with is a carve-out for similarly situated people to Ryan, where now you're providing monetary damages against the school district and or teachers for a failure to implement an IEP. In that rare circumstance where the failure to implement was due to retaliation by the district, then and only then would the resort to a due process hearing be exempted. And that's what the Second Circuit has found and what the Ninth Circuit has found. Thank you very much. We'll get you back on rebuttal.  We'll get you back on rebuttal. Thank you. Mr. Ginsburg. Good morning, or I guess good afternoon at this point. Good afternoon. Craig Ginsburg for all of the appellees. Your Honors, the district court ought to be affirmed here, and let me address why by looking at just the plain and simple facts about the IDA process, which could have provided the plaintiffs everything they wanted if they had chosen, which they should have chosen to pursue. You start off with the ability to present a complaint about what you say is wrong with a special education. That complaint is addressed very quickly. It must be responded to within approximately ten days. After that, there's a resolution meeting between the parties to see if the complaint can be resolved for litigation. After 30 days, if the matter isn't resolved, then there's going to be hearing. And generally speaking in the regulations, that hearing ought to occur in 45 days. And the process moves very rapidly like that. And the parties get to present their evidence, testimony, documents, what have you, that must be revealed within five days of the hearing. And you have the hearing, and you have a decision by the hearing officer. Okay? Now, that hearing officer decision can then be, in essence, appealed through a complaint filed in federal district court. At that point, the plaintiffs can obtain and can request the relief that they can't obtain at the administrative phase. They can request compensatory damages. All the things that they say they can't get, they can get. Let me ask you this question. Sure. Now, we can get to whether they can request compensatory damages in a moment. Right. But let's start from where they start, right? Sure. Which is this. They argue that there's a failure to implement what we've agreed to. Right. Now, I presume your position is at the 10-day point, the 30-day, the 45-day, at each of those stages, they can be heard with regard to a failure to implement the IEP. Absolutely. So that your real response is they never get to compensatory damages because they can get a full and fair opportunity to be heard on the implementation at every step of the due process that's provided. Actually, my point is that they can get all the relief they're seeking. At the administrative level, they can seek redress and obtain whatever redress is available from the order of the hearing officer because the hearing officer is empowered to give compensatory education, to order other measures. I mean, there's very broad – Not monetary damages. Not monetary damages. However – When can they get the monetary damages? At district court level because they're – How do they ever get there, though? If they go through the – as I understand the crux of their claim, they want some money and they're saying, well, if we have to go through this onerous administrative process, we're never going to get a chance to ask for the money. Untrue. Based on what I've just told you, and this is just a plain reading of the IDA, when you get to the end of the administrative process, if the plaintiff wants to go further, they file a complaint in federal district court. That complaint is not limited to the relief they're seeking at the administrative level. It can include other claims. It could look just like the complaint they filed in this case. That's exactly right. And it happens very quickly, as you can see from the schedule that I've laid out. And they can seek all of that relief in front of the federal district judge. Well, let me ask you this. Let's say in our factual scenario, it says here, as is alleged here, that the retaliation occurred before they go to due process, right? So they want redress for the retaliation. I suppose the first response is the primary redress that could be provided at the due process stage is implementation of the IEP. Implementation of the IEP. Here they have all kinds of complaints beyond implementation, of course. But, yes, the hearing officer is clearly empowered to tell the district, you're not doing A, B, C, and D right. Do it. And do it within a certain amount of time. Okay. So let's say in just a slight hypothetical on our current factual scenario that they do that and what is desired under the IEP is implemented, right? But now we seek redress for what occurred before we began the due process. Right. Process. Yes. Now, you would agree that redress for the retaliation is not available in the due process. Redress for the retaliation in terms of money damages isn't, but other redress is available. No, I get it. They can get the implementation. But there's no ability to seek redress in that stage. So why isn't the futility argument applicable here? Okay. I want to make sure I understand your question, Your Honor. Yeah. You are wondering whether the hearing officer is empowered to give any kind of remedy for the retaliation. Right. And he can or she can. Absolutely. Because in this case, for example, the retaliatory behavior was rudeness at meetings, refusal to implement the allegedly, refusal to implement the IEP. There was also a 504 educational plan here and a settlement agreement and payments that were allegedly weren't being made. Of course, we deny all this. We haven't had the answer yet. But the bottom line is the hearing officer can order the district to do things. It can order the district to make payments. It can order the district to provide services. It can order the district to behave properly if it's not behaving properly. All of that's within the sort of equitable power of the hearing officer to provide. All of that relief is available at the administrative level. Really, in this case, the only thing that isn't available to the plaintiffs that they want is money. And they can get that if they go through the ordinary IDEA process. They get it in district court. All of it. Everything they want. And the other thing I dispute is that the plaintiffs say this case is not about education. Their entire complaint is about education. Tutoring. Payments under the settlement agreements. The educational plans. The extracurricular activities that they say that Ryan was excluded from. All of that is well within the realm of what hearing officers hear all the time. Those are ordinary special education matters. And they claim that all of that impacted Ryan's educational well-being. Again, claims and issues that hearing officers hear all the time. The retaliation issues that have come up in this case are being called unique. That this case is somehow different from many, countless cases that are heard under the IDEA. And that's untrue. If you look at the many cases we cite in our brief, and we've cited like 50 of them, too many for me to recount, you'll see that the facts are really very much like the facts here. I'm not saying they're identical. But there are people who are claiming the district is retaliating against them, is being obstinate, et cetera. And over and over again. I'm sorry, Your Honor. Go ahead. Speaking of those cases, Mr. Ginsburg, would you address the question I asked Mr. Schwartz regarding how district courts have interpreted Mottula? Yes, absolutely. So there seems to be two strains happening there. One is the one that happened here. The district court judge said, we're looking at it more narrowly. There were administrative proceedings. Okay? There was a settlement agreement. And that's why the court said that you didn't have to exhaust. Because it was already all done. It was all done. And then there's another strain that is sort of looking at Mottula's discussion about claims under Section 1983 based on the IDA. And Mottula makes a lot of broad statements that you could make that kind of a claim and get damages for it. And I don't think that's the correct reading of Mottula. I think the correct reading of Mottula is the one that the district judge made here. Because when you look at the facts of the case. Has our court in panels of this court in non-presidential opinions explicated or narrowed Mottula in any way? Or are we sort of writing on a blank Mottula slate here? I think that you're writing on a blank slate. All right. How would you suggest we – obviously you're – Of course, realizing that Mottula on its main holding was reversed by AW. Yes. That's right. I didn't know what you said. Reversed by what? AW. Yes. The decision of 2007. It was on the 1983 issue, yes. But this implementation exception continues today, right? Well, I would disagree with the plaintiffs that there is an implementation exception. All right. Well, that's where I wanted to get to. Are you going to take that – Yes. You're going to plant the flag that far out and say there's just no such thing as the implementation exception? I think that there could be situations which fit the kind of problems that's described in legislative history and in some of the cases where there's simply just a flat refusal to do anything. Okay? And maybe – Or are you saying then that we should just stick with the futility exception? Forget about using the phrase implementation exception and just focus on futility and say when it would be futile to go through the administrative process, there is an exception to the exhaustion requirement. That's exactly what was said in our brief. And implementation exception has to fit within one of the standard exceptions, one of which is futility. And that's the way it ought to go. And, you know, let's think about this, too, from a practical standpoint. And you saw this in the district court opinion on the issue of money damages. You know, if you let a plaintiff just come in and say, oh, we want his money. We don't want any of this stuff, other stuff. We don't want any of the educational relief. Well, then everyone, you know, that just wants money starts coming into federal court, which is not the way the IDA is supposed to work. Well, it's the same way with implementation. If people just want to say, hey, they refuse to do anything, and it's futile, and here I am in federal court, take my case because district's not doing anything. But that's a factual determination. I mean, they can say anything they want in a complaint, a plaintiff can. And they shouldn't have a ticket to federal court just because they can say it in their complaint. And I want to point out in one other case, the Comininos case, which is a different issue, but just to illustrate my point. In that case, I believe the issue was whether or not there could be preliminary kind of relief, emergency kind of relief to get around the IDA. And the court said there could be, but you better come to federal court with a lot more than just a bare complaint. You better have all kinds of things attached to your complaint to show us there's really an issue. There were three complaints in this case, and there's nothing like that with any of the complaints. They're bare, unsupported allegations. And you shouldn't be able to get into federal court. It completely undermines the way things are supposed to work to allow plaintiffs simply to just allege, I only want money damages. It's implementation. And find their way into federal court that way. It just completely undermines the IDA process. Maybe you answered this, and if so, you'll tell me. But I presume that your point is our view of implementation may be different if there was an exhaustion requirement for implementation. I'm not sure I understand the question, Your Honor. Could you repeat that? I'm sorry. Here's what I'm thinking through. I presume, well, not I presume. The plaintiffs want to forego due process. Right. Right. Claiming implementation. Right. And saying that that's the basis to get to federal court for just compensatory and or punitive damages. Right. Is your position that you can seek damages for implementation if you choose, but you'd have to first exhaust. That's right. Exactly. If you exhaust and presumably receive the imprimatur of the hearing officer, then you can seek damages. No question about that. That's what the IDA says, Section 1415I. Once you're aggrieved, you can file your complaint in federal court, and if you think you're entitled to damages, you can get them. And, in fact, the DE versus Central Dauphin case, even when the plaintiff completely prevailed on all the issues before the hearing officer, they were able to go on and get more relief at the district court level. So we've really gotten far afield in this case. The way it should have worked is the way I laid out in the beginning of my argument. We've ended up in a situation where in the midst of the district court litigation, we've been sued in the PHRC. We were sued in state court. We've gone all over the place here, and a lot of time has been wasted. It didn't have to be, because the IDA process is so efficient and provided the plaintiffs with everything they wanted. In any event, I think that I've – Exhaustions is, you know, obviously it needs unique circumstances. How do you deal with the – or distinguish the Ninth Circuit and bank case in Payne that said that if something is not available under the IDEA, then exhaustion doesn't really apply? If something's not available under the IDEA? In other words, if you can't get the relief you seek under the IDEA, you're not required to pursue, to exhaust your claims since they're not – since we know at the outset they're not available. A couple of responses. I don't recall the exact facts of that case, but in this case, everything that the plaintiffs want to get, they can get through the IDEA process. Maybe not right away, okay? But all of the relief they want to stop school district officials and teachers from doing things they can get through the IDEA, and once they've exhausted that, they get to sue for the damages they want. They get all of the things that they can't get through the IDEA. And, you know, one of the dangers of interpreting the implementation exception the way the plaintiffs would like to is discussed in the Pallera case that we decided. And what Pallera says is, you know, looking at the legislative history, looking at the arguments on implementation, if you interpret implementation that broadly, it swallows the whole process. And, you know, everyone can just argue implementation, and when you think about it, everything that happens with special ed is implementation. It's doing something. And so anyone in any special ed case can argue failure to implement because it's an issue in every case. In any event, Your Honors, thank you very much. It's a pleasure appearing before you. Thank you very much. Mr. Schwartz? If this was a case that did not have the retaliation ramifications that this case has, I would agree with almost everything that Mr. Ginsburg said. But that is not this case. So if the plaintiff pleads retaliation under the RA, the ADA, the IDEA, and seeks monetary damages, there's no exhaustion requirement. It's that simple. Almost that simple, Your Honor. But there has to be a basis for the retaliation claim. Well, you can't figure that out until you go through discovery and deposition, et cetera, and summary judgment practice, et cetera. Right. But our complaint is this here. As long as you plead it. Yeah, we pled. And that's what this case is. If you pleaded factually sufficient to satisfy twitball, you're in the federal court. I believe. Without ever having gone through the administrative process. Yes, Your Honor, because of the fact that this was an undisputed IEP. Mr. Ginsburg is correct. Almost all cases have to do with the implementation of an IEP. But in 99% of the cases, it's the parents that are saying the IEP is inadequate. It doesn't sufficiently meet the needs of my disabled student. It is not providing him or her with enough support. So, yes, you fully implemented it, but it's not working. Those are classically the kinds of educational issues that have to be decided or should be decided in a due process hearing. But whether someone is retaliated against or whether someone's written IEP, which then becomes binding on the district, legally binding, whether that is in fact implemented, those are two legal questions. And typically courts do not defer to administrative agencies when the issues that are presented are solely legal issues. And plaintiff's complaint in this case presents only two issues, both of which are legal. Was the IEP implemented as written? And was Ryan and or his mother retaliated against as per plaintiff's complaint? But what underlies the answer to those two questions, right, are questions of fact, which isn't the hearing officer in a better position to resolve more thoroughly and more quickly? No, Your Honor, because he can give us no remedy. If the hearing officer was to say, we have found that there is retaliation here and that Ryan was so retaliated against and he felt so bad he was forced to leave the school. But there can be no remedy. There's no remedy for that under this Court's decision that you cannot get compensatory or punitive damages in a due process hearing. So that would be completely futile to go there. Why go there? Why spend the time and the effort when the only appropriate relief for retaliation is compensatory and or punitive damages? The only appropriate relief for a breach of contract is whatever damages resulted from that breach of contract. These are legal issues, not educational issues. Let me ask you this. Yes. You plead, not you, but one pleads retaliation. The principal doesn't like my child. We've agreed on the IEP and we've agreed on whatever, 25 hours of tutoring services with someone who's superior in the field that's necessary. And because the principal doesn't like you, none of that is provided. Now, at that point, that's retaliation. We can agree on that in my hypothetical. At that point, compensatory and or punitive damages, you would say, are not the primary focus of either the parent or the child. It's getting the tutoring services that the child needs at that point. Your Honor, your hypo is deficient in one way. That does not get us to retaliation. To prove retaliation, the parent has to have taken protective action. Saying that the district doesn't like my kid is not protective action. No, I said the tutoring services were withheld. No, but we don't even get to the withheld tutoring services. In order to prove retaliation, the first element of a retaliation claim is that the parent and or the student participated in a protected activity, i.e., tried to assert their rights, legally protected rights, under either the Rehabilitation Act or the IDEA or whatever. Then the second element is, was the district aware of that? Absolutely they were aware. Third, was some kind of detrimental action taken by the district, i.e., failure to implement the IEP, failure to allow Ryan to participate in extracurricular activities, tremendously harming his parents or his mother and humiliating her when she would go to meetings and try and do this thing. Then the fourth thing is, is there a causal relationship between the action that the district took and the fact that the parents and or the student exercised a protected activity? Those are all legal issues beyond the can of a due process hearing. Thank you very much. Thank you to both counsel for very well presented arguments. We'll take them out of under advisement.